648 A.2d 1299

**A.A. SHAMAH, Appellant,**

v.

**HELLAM TOWNSHIP ZONING HEARING BOARD and County Line Quarry, Inc.**

Commonwealth Court of Pennsylvania.

Argued May 13, 1994.

Decided Sept. 26, 1994.

Caroline M. Hoffer, for appellant.

William B. Anstine, Jr., for appellee/intervenor County Line Quarry, Inc.

Before COLINS, SMITH and PELLEGRINI, JJ.

SMITH, Judge.

A.A. Shamah appeals from the April 6, 1993 order of the Court of Common Pleas of York County affirming the determination of the Zoning Hearing Board of Hellam Township (Board), which granted the application of County Line Quarry, Inc. (County Line) for a special exception to expand quarrying operations over additional lands. Questions presented for this Court's review include whether the application for special exception was premature; whether County Line met its burden of proof of showing compliance with the Hellam Township zoning ordinance; whether Shamah's evidence and the testimony of other neighboring property owners deserved greater weight than County Line's evidence; whether Shamah was prejudiced by the failure of the Board to make a stenographic record of a hearing; and whether the Board failed to act as an impartial trier of fact.

I

County Line currently operates a stone quarry and related activities on several contiguous parcels of land located in the Township and has been in operation at this site in excess of 100 years. The property in question, consisting of approximately 58 acres, was purchased by County Line in 1988 and is adjacent to the existing quarry area. The tract is located in an agri-rural zoning district in which the Township's zoning ordinance provides that quarrying activities are a permitted use by special exception. Quarry applied for a special exception in March 1992 proposing to mine a portion of this tract as part of its overall quarrying activities. Shamah owns an approximately thirty-acre tract of land to the west of the property in question, improved with a single family residential dwelling.

On September 22, 1992, the Board issued its decision granting County Line's request for special exception and finding as fact, inter alia, that due to the necessity for setbacks and buffering, only approximately thirty-one acres of the tract in question will actually be devoted to quarrying; the tract will

not be quarried until useable stone has been completely exhausted from other areas and would constitute a natural expansion of the quarry while the amount of quarrying will remain the same; County Line does not foresee the actual removal of stone from this tract for a period of possibly twenty years; and County Line intends to immediately begin erecting berms and other barriers required by the Township and the Department Environmental Resources which must be completed, bonded, and approved by the Township, DER, and the Bureau of Mines and Reclamation prior to commencement of stone removal, a period that would take several years. The Board also found that County Line showed through expert witness testimony that there was no increased threat of erosion or flooding due to quarrying activities; there are no known sink holes or flaws in the subsurface geology which would create the threat of collapse of adjacent land; the sound levels emanating from existing quarry operations will not be increased by the expansion of the quarry; and the proposed expansion would be in harmony with the surrounding areas and would not be detrimental to the general health, safety, and welfare of the community.

The Board acknowledged that certain neighboring landowners and residents voiced concerns regarding dust, noise, and vibrations caused by current quarrying operations. However, the Board noted the objectors offered no expert testimony on this matter nor did they offer any specific testimony regarding traffic conditions. Further, no expert testimony was offered with regard to the blasting operations and the allegedly resultant tremors. The Board also noted Shamah's offer of expert testimony to the effect that quarrying and related blasting on the site could have a detrimental effect on his water supply and the foundation of his house, and that the quarrying activities would have a negative impact on the value of Shamah's property. Nonetheless, the Board credited County Line's evidence, found the objectors' evidence not credible and insufficient to meet their burden, and granted County Line's application subject to enumerated conditions.

■ On appeal, the trial court affirmed the Board, holding that the special exception was not premature because the record shows the extensive preparation required before stone is removed from the earth, including berm construction and the process of obtaining government permits. The court stated that the relevant sections of the Township's zoning ordinance do not require landowners to conduct activities in preparation for quarrying under a cloud of uncertainty as to whether they will secure a special exception before quarrying may begin. Similarly, the trial court rejected Shamah's argument that substantial evidence showed that the existing quarrying operation has significant adverse effects on neighboring properties, noting that the Board considered testimony from both sides concerning the impact of the existing and proposed quarrying activities and determined that County Line's evidence deserved greater weight. The court also held that Shamah waived his objection to the Board's failure to make a stenographic record of the July 7, 1992 hearing by agreeing to proceed with a tape recorded hearing and that the Board did not fail to act as an impartial trier of fact where certain questions posed by a Board member did not reflect bias or prejudice.[1]

## II

### (a)

Shamah first argues that County Line's application for special exception was premature and should have been denied because County Line has no intention of actually quarrying the property for at least twenty years and because the grant of special exception impermissibly vests property rights, thus subverting the authority of the municipality to regulate the use of property by future changes in the zoning ordinance.

1. In zoning appeals, where the trial court takes no additional evidence, this Court's scope of review is limited to determining whether the Board committed an abuse of discretion or an error of law. *Constantino v. Zoning Hearing Board of the Borough of Forest Hills*, 152 Pa.Commonwealth Ct. 258, 618 A.2d 1193 (1992). A conclusion that the Board abused its discretion may be reached only if its findings are not supported by substantial evidence. *Id.*

Shamah asserts that the Board erred in its conclusion that quarrying activities included the preparation of the site for the commencement of quarrying involving the construction of berms, planting of appropriate screening, and undergoing the process of obtaining the necessary permits.

The record however supports the Board's findings that County Line intends to immediately begin construction of the earthen berm which is part of the extensive preparation required before stone is removed from the earth.[2] In addition, quarrying is included in the definition of "surface mining" in Section 3 of the Noncoal Surface Mining Conservation and Reclamation Act, Act of December 19, 1984, P.L. 1093, *as amended*, 52 P.S. § 3303, which provides that such surface mining or quarrying includes exploration, site preparation, and related construction and activities. Thus *all* surface activity connected with the mining, which necessarily includes the removal of overburden and construction of buffers and berms, falls within the definition of surface mining or quarrying. *Warner Co. v. Zoning Hearing Board of Tredyffrin Township*, 148 Pa.Commonwealth Ct. 609, 612 A.2d 578 (1992), *appeal denied*, 533 Pa. 654, 624 A.2d 112 (1993). As the trial court noted, to require a landowner to undergo such preliminary activity before obtaining a special exception would place the landowner under a cloud of uncertainty and misapprehends the nature of the quarrying process, which could result in an expensive and futile process if the special exception is not granted.

As for Shamah's assertion that the grant of a special exception impermissibly vests property rights in County Line, the trial court noted that this argument assumes that the land might be rezoned in the interim if County Line's rights were not secured by the granting of a special exception, and it concluded that the possibility of subsequent rezoning was not a proper consideration. Shamah presents no authority for his argument that the Board's action was impermissible. The

---

**2.** The Board found that the berm surrounding the property would be at an average height of thirty feet with an average width of 200 feet.

power to grant a special exception is vested in the local zoning hearing board, *Hawk v. Zoning Hearing Board of Butler Township,* 152 Pa.Commonwealth Ct. 48, 618 A.2d 1087 (1992), *appeal denied,* 535 Pa. 625, 629 A.2d 1385 (1993); and the grant of a special exception is not an exception to a zoning ordinance but is a use permitted conditionally, one which is stated in the zoning ordinance to be granted or denied by the Board pursuant to express standards and criteria. *Id.*

This Court fails to discern how, as Shamah claims, the Board has given greater rights to County Line by granting the special exception where the activity necessarily requires extensive, long-range planning and will be conducted according to the criteria set forth in the Township's zoning ordinance and conditions imposed by the Board. This is not a case, such as in *Boron Oil Co. v. Kimple,* 1 Pa.Commonwealth Ct. 55, 275 A.2d 406 (1970), *aff'd,* 445 Pa. 327, 284 A.2d 744 (1971), where a proposed zoning ordinance was pending at the time a landowner filed an application for a zoning permit to construct a gas station which would not be permitted under the proposed ordinance and the board properly denied the application. *See also Mutzig v. Hatboro Board of Adjustment,* 440 Pa. 455, 269 A.2d 694 (1970). Any use of property necessarily depends upon the zoning ordinance as it exists at the time of the application, and to hold that a zoning board should deny a special exception based upon the mere possibility that the ordinance may change in the future would yield an unreasonable result in that decisions would be based not upon law but arbitrarily based upon conjecture and supposition. Where there is a possibility that a zoning ordinance may be amended, such possibility should not be considered if it is remote or speculative. *See Snyder v. Commonwealth,* 412 Pa. 15, 192 A.2d 650 (1963).

(b)

Shamah next argues that County Line failed to sustain its burden of proof with regard to compliance with Sections 309 and 405.4 of the Township's zoning ordinance. Section 309 provides that in hearing special exception applications for

quarrying operations, the Board shall consider the requirements of subsections 309.1 through 309.4, which address soil characteristics, slope and drainage, dust and noise transmission, subsurface geology, and rehabilitation planning; various setback requirements; the placement of appropriate barriers around the property for safety and aesthetic purposes; and the washing of quarry materials if it will not seriously deplete the available ground water and will not constitute pollution.[3]

An applicant has the burden of proving that it has met the criteria for special exception contained in the ordinance, and must prove not only that the proposed use was of a type permitted by special exception but also that the proposed use complied with the other applicable requirements of the ordinance which expressly govern such a grant. *Appeal of Baird,* 113 Pa.Commonwealth Ct. 637, 537 A.2d 976 (1988), *appeals denied,* 521 Pa. 613, 557 A.2d 344 (1989); *Bray v. Zoning Board of Adjustment,* 48 Pa.Commonwealth Ct. 523, 410 A.2d 909 (1980). Where a particular use is permitted in an area, it is presumed that the local legislative body has already considered such use for the area in terms of general matters such as health, safety, and the general welfare, as well as the general intent of the zoning ordinance. *Baird.* As an

---

**3.** The remaining subsections of 309.5 through 309.8 of the ordinance address the authority of the Board to regulate quarry operation, rehabilitation, and reporting once quarrying has begun and do not apply to the hearing of special exception applications. Shamah argued unsuccessfully before the trial court that the Board was required to consider County Line's alleged violations of these sections in its current quarrying operations. The trial court properly noted that the Board did not err in finding subsections 309.5 through 309.8 irrelevant to its determination, but the Board nevertheless considered the testimony concerning the alleged violations. Even so, the Board lacks the discretion to punish recalcitrant behavior by denying a subsequent zoning application. *Bell v. Zoning Board of Adjustment of the City of Pittsburgh,* 84 Pa.Commonwealth Ct. 347, 479 A.2d 71 (1984). Shamah cites *Hannon v. Zoning Hearing Board of the City of Wilkes–Barre,* 32 Pa.Commonwealth Ct. 356, 379 A.2d 641 (1977), in arguing that the Board improperly ignored testimony regarding current operations located on property not subject to the application before the Board. That case does not apply here because it addressed illegal activities being conducted on the property subject to the special exception, whereas County Line has not yet conducted quarrying activities on the property in question.

evidentiary matter, this presumption thus shifts the burden to the protestors to prove that the proposed use will have an adverse effect on the general public; the protestors have the burden of going forward with evidence of non-compliance with general conditions. *Id.*

Shamah contends that County Line failed to meet its burden because the testimony and evidence introduced by County Line was limited to the current state of the property and the quarrying technology, and did not address the criteria of the ordinance in terms of what effect quarrying operations will have on neighboring properties in twenty years or more. Shamah relies upon *Baird* in which this Court upheld a zoning board's denial of a landowner's application for special exception to establish a dog kennel in a residential district on the basis that there were no plans or specifications submitted to show compliance with dimensional requirements, and the landowners presented no definite testimony as to the design and construction. In addition, neighboring landowners in that case presented specific testimony regarding the anticipated detrimental effects on the health, safety, and welfare of the community, which testimony was accepted by the zoning board.

The circumstances in *Baird* are distinguishable from those sub judice because County Line presented far more than the mere conceptual plan offered by the applicant in *Baird.* There is no question as to the exact nature of what County Line intends to do with the land and how it plans to go about it. Furthermore, Shamah would have the Board require that an applicant be able to predict the advances in technology and the effects on neighboring properties that result from those advances. To require such prescience of an applicant would transcend the intent of the zoning ordinance and of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11201, particularly where current technology is the only available basis for the Board's decision.

 As to his testimony and that of the neighboring property owners, Shamah maintains that it deserves greater weight than the evidence presented by County Line. As noted above, once the applicant has met its burden of showing compliance with the applicable zoning ordinance requirements, the burden shifts to the objectors to prove that the proposed use will have an adverse effect on the general public. *Baird.* It is the duty of the zoning board in the exercise of its discretionary power to determine whether a party has met its burden of proof. *Borger v. Towamensing Township Zoning Board of Adjustment,* 39 Pa.Commonwealth Ct. 361, 395 A.2d 658 (1978). Determinations as to the credibility of witnesses and the weight to be given to the evidence are matters left solely to the Board in the performance of its factfinding role. *Borough of Youngsville v. Zoning Hearing Board of the Borough of Youngsville,* 69 Pa.Commonwealth Ct. 282, 450 A.2d 1086 (1982). *See also Constantino v. Zoning Hearing Board of the Borough of Forest Hills,* 152 Pa.Commonwealth Ct. 258, 618 A.2d 1193 (1992).

 The Board took testimony from Shamah and the other objectors concerning excessive dust, noise, vibrations, and traffic at the current quarrying site, as well as testimony from Shamah's expert concerning the quarry's alleged negative impact on the value of Shamah's property, his water supply, and the foundation of the house.[4] County Line presented testimony on the nature, extent, manner, and effects of the proposed use. Shamah stresses the testimony presented by his expert witness on value as supporting denial of a special exception. However, objectors to a special exception cannot

**4.** Contrary to Shamah's assertions, the Board did not require that the objectors present expert testimony regarding the adverse effects of the neighboring quarry. In *Borger,* this Court noted that lay testimony of adjoining landowners on such matters is not necessarily incompetent and concluded that the trial court erred in reversing a zoning board's denial of a special exception where the trial court incorrectly concluded that the objectors had not met their burden because much of their evidence consisted of lay testimony from witnesses with no expertise in the technical matters involved. The trial court sub judice made no such conclusion, nor did the Board suggest that the lay testimony presented by the objectors was incompetent because it lacked expertise.

meet their burden of proving an adverse impact by merely introducing evidence to the effect that property values in the neighborhood may decrease. *Achey Appeal,* 86 Pa.Commonwealth Ct. 385, 484 A.2d 874 (1984), *aff'd,* 509 Pa. 163, 501 A.2d 249 (1985); *see also Soble Constr. Co. v. Zoning Hearing Board of the Borough of East Stroudsburg,* 16 Pa.Commonwealth Ct. 599, 329 A.2d 912 (1974). The Board considered the testimony of Shamah and the other objectors and reasonably determined that County Line's expert evidence deserved greater weight, a determination that is supported by substantial evidence of record.

(c)

Shamah next contends that he was prejudiced by the Board's misscheduling of a stenographer, resulting in no stenographer being present for the July 7, 1992 hearing. At that hearing, the Board chairperson noted the lack of a stenographer, as required by Section 908(7) of the MPC, 53 P.S. § 10908(7), and specifically inquired of counsel for Shamah and County Line whether they had any objections to proceeding with the hearing using a tape recorder only, to which each responded that there were no objections. Shamah nonetheless argues that he only did so because of the considerable expense and difficulty of having his expert return for another hearing, with the understanding that the hearing would be tape recorded and transcribed.

Relying upon *Nowak v. Zoning Hearing Board of Bridgeville Borough,* 67 Pa.Commonwealth Ct. 46, 445 A.2d 1350 (1982), Shamah asserts that the Board's failure to provide a stenographic record requires a remand. That case is inapposite, however, because the parties did not waive the requirement, as Shamah did here. More applicable is *Printzas v. Borough of Norristown,* 10 Pa.Commonwealth Ct. 482, 313 A.2d 781 (1973), in which this Court held that where a stenographic recording was not made at a hearing as required by Section 908 of the MPC and instead a sound recording was made, the parties waived their right to object by failing to object until over two months later. Since Shamah openly

waived this right before the Board, his argument is without merit.[5] As for his contention that certain portions of the tape were inaudible and not transcribed, the trial court reviewed the transcript and found that the few words not transcribed were not crucial to a reading of the testimony and their absence did not prejudice Shamah.

### (d)

Shamah last argues that the Board failed to act as an impartial trier of fact and impermissibly favored County Line as reflected by a Board member's questioning of Shamah's expert witness on value. It is not necessary to set forth here the three questions asked by the Board member that Shamah claims reflect bias and prejudice. In general, the Board member expressed in the form of a hypothetical her impression that certain property values in the vicinity of the quarry had increased in value comparable to or better than those in York County on the average, and asked whether Shamah's expert agreed or disagreed with her statements. As the trial court noted, "[a]lthough the questions were expressed in terms which appeared to presume facts favorable to the applicant, this is no different than the typical hypothetical question asked of any witness." Opinion at p. 10. This Court as well finds nothing to indicate any actual bias or prejudice on the part of the Board member.

The cases cited by Shamah to support this argument, *Borough of Youngsville* and *Horn v. Township of Hilltown,* 461 Pa. 745, 337 A.2d 858 (1975), are inapposite. In *Borough of Youngsville,* a zoning board member's objectivity was questioned where he had been employed to survey the property

---

5. In the recent case of *Colarossi v. Clarks Green Board of Zoning Appeals,* 154 Pa.Commonwealth Ct. 217, 623 A.2d 424, *appeal denied,* 535 Pa. 640, 631 A.2d 1011 (1993), this Court relied upon *Printzas* in holding that the trial court properly refused to accept a transcript prepared exclusively from a tape recording made by a party's counsel of a hearing before the board where the Section 908(7) stenographer requirement was not waived and the trial court remanded the case to the board for a new hearing and preparation of an official board transcript upon which the trial court could decide the merits of the appeal. Because Shamah explicitly waived the requirement, *Colarossi* is inapplicable.

and had participated in an earlier proceeding as a witness in support of the applicant. In *Horn,* a violation of due process was found where the solicitor represented both the zoning board and the township, which was opposed to the application under review. Moreover, the case sub judice is in stark contrast to a recent decision by this Court where bias and prejudice of a council member was found to exist by virtue of his widespread publication of opposition to a proposed development prior to hearing before the council, and remand was ordered for another hearing absent the biased council member. *Prin v. Council of Municipality of Monroeville,* 165 Pa.Commonwealth Ct. 519, 645 A.2d 450 (1994).

The Board having committed no abuse of discretion or error of law, the trial court's order is accordingly affirmed.

## ORDER

AND NOW, this 26th day of September, 1994, the order of the Court of Common Pleas of York County is hereby affirmed.